■ ELLIOT SKLUTH, Respondent, v UNITED MERCHANTS & MANUFACTURERS, INC., Appellant.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on April 14, 1989, which denied defendant's motion for summary judgment dismissing the complaint, is reversed on the law and the motion granted, without costs or disbursements.

Plaintiff-respondent Elliot Skluth commenced this action against defendant-appellant United Merchants & Manufacturers, Inc., his former employer, alleging that he was unlawfully

terminated as general sales manager of its Ameritex Print Division following 39 years with the company in violation of the New York State Human Rights Law (Executive Law § 290 *et seq.*). In that regard, plaintiff asserts that his discharge was the result of age discrimination. After discovery had been completed, defendant moved for summary judgment dismissing the complaint against it on the ground that plaintiff had knowingly and voluntarily executed an unambiguous and comprehensive written release in exchange for additional employment benefits to which he would not otherwise have been entitled. It is defendant's contention that plaintiff's termination was due to the company's decision to cease operation of the Ameritex Print Division because it sought to change substantially its approach to merchandising print fabric lines. Consequently, Ameritex was liquidated with the assistance of a skeleton staff possessing the specialized skills needed to perform the close-out functions. Plaintiff, on the other hand, insists that defendant placed in his former position a younger employee, a fact with which he became acquainted only after he had signed the disputed release.

Plaintiff's employment by defendant was documented through a series of written agreements, the last of which was for a two-year term ending on June 30, 1986. One of the clauses of that contract authorized either party to sever the employment relationship without cause upon 90 days' written notice. In March of 1986, Sidney Margolis, defendant's executive vice-president, advised plaintiff, who was purportedly aware of the general decline in Ameritex's business, that he was being terminated. Normally, he would have been entitled to receive salary and benefits only during the 90-day notice period specified in the employment agreement, and the 90-day severance pay period would thereafter begin. However, Margolis acceded to plaintiff's request that he be accorded additional benefits during the severance period. This extension of benefits formed the consideration for plaintiff's execution of the release pursuant to which he agreed to "release and forever discharge [defendant] from all liability of every kind, nature and description" arising out of his employment subject, in part, to the collection of stated salary payments, his pension rights, and his right to participate in defendant's comprehensive medical plan at his own expense so long as he was not enrolled in any other group medical program.

When plaintiff initially received the letter agreement, including the release, from defendant, he did not give it much attention until he reportedly was telephoned by Stanley Sie-

gel, the company's benefits administrator, who informed him that if he did not sign the release defendant might discontinue certain fringe benefits. Plaintiff also claims that Siegel represented to him that his signing would not effect any subsequent actions which he might choose to take against defendant. Accordingly, he executed the release on July 9, 1986. It should be noted that despite retaining the proposed letter agreement for nearly five weeks, he failed to consult an attorney. In that regard, the parties differ as to whether plaintiff was encouraged by Margolis to show the release to a lawyer before signing it. Plaintiff, however, does not assert that defendant ever attempted to dissuade him from seeking legal counsel. Yet, the Supreme Court, in denying defendant's motion for summary judgment dismissing the complaint, found significant the fact that plaintiff did not consult an attorney and that no lawyer had any role in negotiating the agreement. Moreover, the court, while recognizing that plaintiff is a college graduate with considerable business experience, as well as knowledgeable about similar release letters signed by other terminated sales personnel, and that the release was supported by consideration, still perceived the existence of genuine unresolved issues of fact based largely on the failure of the release to refer clearly and unequivocally to claims such as the one presented here (that is, a civil rights violation), citing *Oglesby v Coca-Cola Bottling Co.* (620 F Supp 1336). We disagree with the conclusion of the Supreme Court that releases, insofar as they involve allegations of discrimination, are disfavored as a matter of law and are, consequently, to be treated dissimilarly from contractual releases in general.

As was aptly stated in *Appel v Ford Motor Co.* (111 AD2d 731, 732), "[i]t is firmly established that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties". A release may, of course, be attacked for being the product of fraud, duress or undue influence *(Fleming v Ponziani,* 24 NY2d 105), but plaintiff's only challenge to the release in question is that he did not have a lawyer advising him to sign it, and he did not learn until after he had approved the release that he had been replaced by a younger employee. Further, the Supreme Court's reliance upon *Oglesby v Coca-Cola Bottling Co. (supra,* at 1339) is misplaced since the agreement at issue therein specifically released the employer from " 'any claim now and in the future with respect to *employee benefits, insurance, salary* or any other claim related to employment' " (emphasis

added), whereas plaintiff's release did not contain such limiting categories. On the contrary, plaintiff released defendant from "all liability of every kind, nature and description" arising out of his employment with the company. There is, clearly, no language whatever that can be reasonably construed as restricting the release to claims concerning salary, medical benefits or other forms of financial compensation, and no legal authority exists for the proposition that a release must expressly mention a discrimination claim in order to be valid and binding with respect thereto. Indeed, as defendant points out, the fact that Congress is currently considering legislation that would prohibit the enforcement of releases to the extent that they do not specifically contain reference to age discrimination claims is evidence of the absence of any such rule under current law. Since the agreement herein clearly and unambiguously releases defendant from "all liability of every kind, nature and description", the instrument operates as a matter of law to release defendant from any and all claims, whether already accrued or which might arise subsequent to the date of execution, including plaintiff's assertion of age discrimination.

The other factor deemed crucial by the Supreme Court, plaintiff's failure to consult with an attorney, also does not preclude enforcement of the release. The court properly found that plaintiff is an educated, experienced businessman with knowledge of release letters such as the one that he was asked to execute. He had ample time to seek legal advice prior to signing the instrument and was, even accepting plaintiff's own version of the facts, not prevented or discouraged from doing so by defendant. There is, certainly, no requirement in the law that consultation with a lawyer must occur in order to render a contractual obligation enforceable, even one relinquishing a discrimination claim, so long as the agreement has been knowingly and voluntarily entered into. Although a party's representation by an attorney is some evidence of the knowledge and volition with which a particular contract was made *(see, Viskovich v Walsh-Fuller-Slattery,* 16 AD2d 67, *affd* 13 NY2d 1100), the absence of counsel is far less critical than the opportunity to consult counsel *(see, Cirillo v Arco Chem. Co.,* 862 F2d 448; *Lancaster v Buerkle Buick Honda Co.,* 809 F2d 539, *cert denied* 482 US 928). Accordingly, defendant is entitled to summary judgment dismissing the complaint against it. Concur—Kupferman, J. P., Milonas, Asch and Kassal, JJ.

Smith, J., dissents in a memorandum as follows: I would

affirm the IAS court's denial of summary judgment since there are material issues of fact as to the voluntary and knowing nature of the release and the intent of the parties.

On March 6, 1986, the then-62-year-old plaintiff was advised that effective September 3, 1986, he would be terminated from his position as general sales manager of the Ameritex Print Division of defendant United Merchants & Manufacturers, Inc. (United). Plaintiff, who had been employed by defendant since 1947, was informed that termination of his employment was due to the ongoing reorganization of United. Plaintiff maintains that defendant failed to reassign him to another position for which he was qualified and that his duties were assumed by 35-year-old Fredrick Stein who plaintiff contends had been his assistant. Plaintiff further alleges that between 1984 and 1986, defendant engaged in the practice of terminating older employees and replacing them with younger individuals.

Following extensive discovery, United moved for summary judgment, contending that the action was barred by a release. United maintained that the release was clear and unambiguous, and was voluntarily executed by plaintiff.

A letter dated June 3, 1986 from defendant's executive vice-president to plaintiff contained the subject release. The letter states in relevant part:

"Dear Elliot:

"This will confirm our agreement that your employment contract, dated June 28, 1984, shall terminate June 5, 1986.

"It is agreed that you shall continue in our employ from June 6, 1986 through September 3, 1986 * * *. All fringe benefits provided in connection with your employment relationship as a contractual employee will continue during this period. * * *

*"In consideration of the foregoing, each of us agrees to release and forever discharge the other from all liability of every kind, nature and description arising out of your employment* with us, subject to:

"1. collection of the salary payments referred to above;

"2. any pension rights * * *

"3. your obligations [not to disclose trade secrets or interfere with employer's contractual relations] * * *

"4. your right to participate in UM&M's group comprehensive medical plan * * * and

"5. your right to a $25,000.00 life insurance policy" (emphasis supplied).

The release was executed by plaintiff on or about July 9, 1986.

A release need not specifically address a human rights claim in order to be enforced. Such claims may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights as done so voluntarily and with full knowledge of the consequences of its waiver. *(Alexander v Gardner-Denver Co.,* 415 US 36, 52 [1974]; *Coventry v United States Steel Corp.,* 856 F2d 514, 521 [3d Cir 1988]; *Oglesby v Coca-Cola Bottling Co.,* 620 F Supp 1336, 1341 [ND Ill 1985].)

In this case United argued that the clear language of the release, and plaintiff's college education, 39 years of business experience, past familiarity with releases, possession of the release for over four weeks, successful negotiations for a 90-day extension of employee benefits in consideration for the release and opportunity to consult with counsel required a finding that execution was knowing and voluntary.

On the other hand, in opposition to summary judgment, plaintiff alleged that the release was not the result of negotiations and was not signed in consideration of any benefit. Rather, he claimed that the 90-day extension of benefits was willingly agreed to by defendant's vice-president beforehand. Plaintiff also claimed that based upon his experience with releases utilized by defendant, it was his belief that the release he executed related to claims for future sales commissions and other moneys due to outgoing salesmen. He maintained that he was not aware that he had been replaced by a younger person until after he signed the release and that had he intended the release to cover an age discrimination suit, he would have bargained for more significant benefits. To argue, as does defendant, that plaintiff is only dissatisfied with the bargain avoids this issue. Plaintiff further alleged that defendant's benefits administrator advised him that if he did not sign the release, certain fringe benefits might be cut off and that if he signed, the release would have no effect on any subsequent action he might take against United. The parties disagree whether defendant recommended to plaintiff that he seek the assistance of counsel.

The meaning and coverage of a general release necessarily depends upon the controversy being settled and upon the purpose for which the release is actually given. *(Cahill v Regan,* 5 NY2d 292, 299 [1959] [general release did not extinguish employer's shop right in an invention patented one year later since at the time of the release the parties were concerned solely with settling the ownership of certain machin-

ery]; *Jochnowitz v Russell Sage Coll.,* 136 AD2d 822, 823 [3d Dept 1988] [general release in settlement agreement did not bar subsequent age discrimination action after plaintiff had attained the age of 70]; *see also, Nadal v Childs Sec. Corp.,* 18 AD2d 375 [1963], *affd* 14 NY2d 672.)

In this case the record clearly reveals a factual dispute between the parties regarding the circumstances surrounding execution of the release and the intent of the parties.

In *Equal Employment Opportunity Commn. v American Express Publ. Corp.* (681 F Supp 216 [SD NY 1988], later proceeding 710 F Supp 56 [SD NY 1989]), Judge Lasker articulated six factors to be considered in evaluating the knowing and voluntary nature of releases from claims under the Federal Age Discrimination in Employment Act of 1967 (29 USC § 621 *et seq.* [ADEA]) under a "totality of the circumstances" test. These factors are just as relevant to a determination of the validity of a waiver of claims under the New York Human Rights Law (Executive Law § 290 *et seq.).* The court stated that determination of "whether a release is voluntary depends on: 1) the plaintiff's education and business experience, 2) the amount of the time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law" (216 F Supp, *supra,* at 219, citing *Lancaster v Buerkle Buick Honda Co.,* 809 F2d 539 [8th Cir 1987], *cert denied* 482 US 928 [1987]; *DiMartino v City of Hartford,* 636 F Supp 1241 [D Conn 1986]).

In *Equal Employment Opportunity Commn. v American Express Publ. Corp.* (681 F Supp 216, *supra),* the EEOC alleged that the employer had engaged in a policy of age discrimination and that that policy led to the complainant-employee's discharge. The employer moved for summary judgment on the basis of, *inter alia,* a general release executed by its employee. The District Court, after considering the six enumerated factors, found that several of them militated in favor of dismissing the complaint, including the employee's college education and years of business experience, the unambiguous and relatively clear language of the release which referred to "all claims" and "causes of action", and the employee's opportunity to consult counsel. Nonetheless, the District Court concluded that there were material issues of fact as to several

other factors, raising a question as to the voluntariness of the agreement. These factors were (1) the role, if any, played by the employee in deciding the terms of the release and whether any negotiation had occurred, (2) the amount of consideration, if any, (3) the role of the employee's attorney and (4) the amount of time the employee possessed the release before signing it.

Thereafter, the United States Court of Appeals for the Third Circuit decided *Coventry v United States Steel Corp.* (856 F2d 514, *supra*), in which it reversed a District Court holding that the employee's execution of a claim release form in order to obtain pension benefits constituted a voluntary and knowing waiver of claims under ADEA. In an opinion by Judge Leon Higginbotham, Jr., that court held that in determining the validity of such a waiver, courts must engage in careful evaluation of the release form itself as well as of the totality of the circumstances in which it was executed. It then went on to apply the six factors set out in *Equal Employment Opportunity Commn. v American Express Publ. Corp.* (681 F Supp 216, *supra*), concluding that the employee's execution of the release was not the result of negotiation but rather the result of economic coercion. In *Coventry,* the court found that the employer had given the employee a take-it-or-leave-it offer of a layoff of uncertain duration, or early retirement upon execution of the release. The court also found significance in the absence from the record of any indication that the employee was encouraged by defendant to consult an attorney prior to execution of the release, or that the employee had in fact consulted an attorney. (856 F2d, *supra,* at 524; *see also, Bormann v AT & T Communications,* 875 F2d 399, 403 [2d Cir 1989], *cert denied* — US —, 110 S Ct 292 [1989].) Thus, a seventh factor to be considered under the "totality of circumstances" test is whether an employee was encouraged to or discouraged from seeking counsel.

In *Oglesby v Coca-Cola Bottling Co.* (620 F Supp 1336, 1339, *supra*), plaintiff executed a release of " 'any claim * * * with respect to employee benefits, insurance, salary or any other claim related to employment.' " The District Court denied defendants' motion for summary judgment, finding that ambiguities in the language of the release precluded any ruling as a matter of law as to the release's intended coverage and that contractual intent is for the trier of fact.

Defendant argues that the release herein differs from the one in *Oglesby (supra)*. The relevant language is "release and forever discharge * * * from all liability of every kind, nature

and description arising out of your employment with us, subject to * * * collection of * * * salary * * * any pension rights". Defendant argues that since in *Oglesby* the general language appears after the list of employment benefits, the *ejusdem generis* rule of construction limits the general clause. Here, defendant claims, the list of employment benefits appears after and constitutes exceptions to the general language of the release. However, since the only listed exceptions relate to employment benefits, it is unclear whether the general language also related only to employee benefits and plaintiff reasonably could have believed that it did. *(See, Anderson v Montgomery Ward & Co.,* 650 F Supp 1480, 1486 [ND Ill 1987] ["waiver of 'all provisions of any compensation practices' " did not bar discrimination action]; *Bernstein v Consolidated Foods Corp.,* 622 F Supp 1096, 1106 [ND Ill 1984] [release of "right to 'remuneration' " and " 'compensation' " rather than " 'causes of action' " or " 'suits' " creates genuine issues of material fact precluding summary judgment]; *Oglesby v Coca-Cola Bottling Co.,* 620 F Supp, *supra,* at 1341 [" 'any claim * * * with respect to employee benefits, insurance, salary or any other claim related to employment' " was ambiguous].)

The IAS court considered the seven factors set forth in *Equal Employment Opportunity Commn. v American Express Publ. Corp. (supra), Coventry v United States Steel Corp. (supra)* and *Bormann v AT & T Communications (supra)* and concluded that under a "totality of the circumstances" analysis, material questions of fact are raised as to the voluntary and knowing nature of the release. As the IAS court properly found, several factors, namely plaintiff's education and business experience and the time within which plaintiff had possession of the release and an opportunity to consult with counsel, militate in favor of a voluntary waiver. However, several other factors raise questions as to voluntariness. These questions include, (1) the extent of negotiation and the benefits plaintiff received, if any, and (2) the parties' contractual intent, in light of the unclear language of the release.

*Lancaster v Buerkle Buick Honda Co.* (809 F2d 539, *cert denied* 482 US 928, *supra)* and *Cirillo v Arco Chem. Co.* (862 F2d 448 [3d Cir 1988]), relied upon by the majority, are readily distinguishable. In *Lancaster,* the 53-year-old plaintiff, by agreement, released defendant from " 'each and every claim of any kind * * * resulting from * * * termination of employment' " (809 F2d, *supra,* at 540). In consideration, Lancaster received $39,000 in severance pay as well as other benefits. In granting the employer's motion for summary

judgment, the District Court noted that all of the facts upon which Lancaster relied for his cause of action occurred before the date of the release and were known to him, and that at the time he executed the release, Lancaster believed that his termination was not justified. In affirming, the Court of Appeals pointed out there were "no genuine issue of material fact with regard to the basic facts underlying the making of the termination agreement." (809 F2d, *supra,* at 541.)

In *Cirillo v Arco Chem. Co. (supra),* the plaintiff executed a release in consideration of retirement benefits amounting to more than $300,000. A "notice" in the agreement clearly advised plaintiff of his rights under both State and Federal Human Rights Law and advised him to seek counsel. The release then specifically referred to the waiver of employment discrimination claims. Relying upon the "totality of the circumstances" test of *Coventry v United States Steel Corp. (supra),* the Court of Appeals for the Third Circuit concluded that Cirillo's release of his ADEA claims was knowing and voluntary, and affirmed the grant of summary judgment to defendant.