■ DONALD E. STONE, Appellant, v NATIONAL BANK AND TRUST COMPANY et al., Respondents.—Crew III, J. Appeal from an order and judgment of the Supreme Court (Smyk, J.), entered January 23, 1992 in Chenango County, which, *inter alia,* granted defendants' motion to dismiss the complaint on the grounds of payment and release.

In January 1985 plaintiff, then employed as an executive vice-president of KeyCorp, was contacted by an executive search company regarding a position with defendant National Bank and Trust Company (hereinafter NBT).* Later that year, plaintiff and NBT entered into employment negotiations and in November 1985, plaintiff resigned from his position at KeyCorp and signed a five-year employment agreement, effective February 1, 1986, to serve as president and chief operating officer of NBT. Plaintiff began his tenure as president of NBT at the age of 55. Thereafter, on or about January 12, 1988, the parties executed an excess benefit plan for plaintiff.

In October 1989, NBT's compensation and benefits committee considered and approved a proposal to extend plaintiff's employment for an additional five years. This proposal was subsequently rejected by NBT's executive committee and, as a result of this and other activities allegedly undertaken by defendants, plaintiff elected to become a retired early employee pursuant to the terms of his employment agreement. Thereafter, on November 30, 1990 the parties executed a severance and noncompetition agreement (hereinafter the severance agreement) which, together with the annexed exhib-

---

* In 1986, NBT became a wholly owned subsidiary of defendant NBT Bancorp, Inc. Thus, with respect to events subsequent to 1986, defendants NBT and NBT Bancorp, Inc. will be collectively referred to as defendants where appropriate.

its and schedules, was intended to represent "the full, final and complete resolution of the termination of [plaintiff's] employment". The severance agreement provided for, *inter alia,* the continuation of certain employment benefits through January 31, 1991 and the payment of "the aggregate amount payable to [plaintiff] under the NBT Bancorp, Inc. Long Term Incentive Compensation Plan through December 31, 1990". The severance agreement also required the parties to execute two sets of general releases releasing, *inter alia,* "all actions, causes of action, suits, debts * * * claims, and demands whatsoever, in law * * * or equity, which [the parties] ever had, now have or hereafter can, shall or may have * * * from the beginning of the world to the * * * date of [these] RELEASE[s] excluding, however, any obligations [of the parties] set forth in the [severance agreement]". One set of releases was executed at the signing of the severance agreement and the other set was executed at the termination of plaintiff's employment. On December 1, 1990 plaintiff's successor, who was approximately 48 years old, assumed responsibilities as president, chief executive officer and chair of the board of NBT.

Plaintiff thereafter commenced this action and asserted seven causes of action alleging that (1) defendants fraudulently induced plaintiff to resign from KeyCorp by falsely representing that they would provide him with the same benefits he had formerly enjoyed, (2) defendants breached the employment agreement by failing to provide the promised benefits, (3) defendants fraudulently induced plaintiff to accept a lower starting salary than originally promised, (4) defendants breached the severance agreement by failing to pay amounts due under the incentive compensation plan and, hence, (5) plaintiff was entitled to rescission of the severance agreement, (6) defendants intentionally caused plaintiff emotional distress, and (7) defendants unlawfully discriminated against plaintiff on the basis of his age. Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (5) (payment and release) and (a) (7) (failure to state a cause of action). Supreme Court dismissed plaintiff's complaint in its entirety, finding that plaintiff's first, second, third, sixth and seventh causes of action were released prior to the commencement of this action and that plaintiff's fourth and fifth causes of action were barred by payment. This appeal by plaintiff followed.

We affirm. Plaintiff concedes that he executed the releases at issue but contends that defendants' willful breach of the severance agreement entitles him to rescind both the severance agreement and the releases executed pursuant thereto.

We cannot agree. The basis for plaintiff's fourth and fifth causes of action is defendants' alleged failure to pay plaintiff compensation benefits in accordance with the 1989-1991 and 1990-1992 executive incentive compensation plans. Under the terms of these three-year plans, payments to participants are made five months "after the last day of the last fiscal year to which that award relates". Thus, proceeds under the 1989-1991 plan were payable in May 1992 and proceeds under the 1990-1992 plan are payable in May 1993. Plaintiff received approximately $36,000 in March 1991, representing the $43,250 due under the 1988-1990 plan less withholdings. A review of schedule A to the severance agreement plainly reveals that with respect to the three-year compensation plans, plaintiff is only entitled to receive "the aggregate amount *payable* to [him] under the [executive incentive compensation plan] *through December 31, 1990"* (emphasis supplied). Plaintiff received funds payable under the relevant three-year plan through that date and no further sums are due. Accordingly, plaintiff's fourth and fifth causes of action were properly dismissed pursuant to CPLR 3211 (a) (5).

Turning now to the releases executed by the parties, it is well settled that "[r]eleases are contracts whose interpretation is governed by principles of contract law. Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed" *(Metz v Metz,* 175 AD2d 938, 939 [citation omitted]; *see, Mangini v McClurg,* 24 NY2d 556, 562; *Skluth v United Merchants & Mfrs.,* 163 AD2d 104, 106). A release may not be treated lightly; thus, "[i]n the absence of fraud, duress, illegality or mistake, a general release bars an action on any cause of action arising prior to its execution" *(Mergler v Crystal Props. Assocs.,* 179 AD2d 177, 178; *see, Plander Lanes v Bellamore,* 180 AD2d 783, 786; *Metz v Metz, supra,* at 940; *Touloumis v Chalem,* 156 AD2d 230, 231-232). Inasmuch as plaintiff's first, second, third and sixth causes of action each relates to events occurring prior to plaintiff's execution of the general releases in November 1990 and January 1991, respectively, plaintiff's execution of the aforementioned releases serves as an absolute bar to each of these causes of action *(see, e.g., Plander Lanes v Bellamore, supra,* at 786; *Mergler v Crystal Props. Assocs., supra,* at 178).

We reach a similar conclusion with respect to plaintiff's seventh cause of action for age discrimination. Although plaintiff contends that he did not intend to release any claim he might have under Executive Law § 296, he was aware of

the age profile for his replacement and apparently learned his successor's age prior to the execution of the severance agreement and releases. The releases in question plainly and unambiguously release defendants from "all actions, causes of action, suits * * * claims, and demands whatsoever * * * [that plaintiff] ever had, now ha[s] or hereafter can, shall or may have for * * * any matter, cause or thing whatsoever", which includes plaintiff's cause of action for age discrimination *(see, Skluth v United Merchants & Mfrs., supra,* at 106-107). We find the remaining arguments advanced by plaintiff unpersuasive and decline defendants' request to impose sanctions and counsel fees pursuant to 22 NYCRR 130-1.1.

Mikoll, J. P., Mercure and Casey, JJ., concur. Ordered that the order and judgment are affirmed, with costs.