Mary LAMBERTSON, Plaintiff,

v.

**KERRY INGREDIENTS, INC., Defendant.**

**No. CV 98–5059 (ADS).**

United States District Court, E.D. New York.

June 11, 1999.

Tinari, Parr, O'Connell Osborn & Sliney, LLP, Mineola, New York, By Benedict L. Sliney, of counsel, for plaintiff.

Mayer, Brown & Platt, New York City, By Gary D. Friedman, of counsel, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Mary Lambertson ("Lambertson" or the "plaintiff") initiated this action against Kerry Ingredients, Inc. ("Kerry" or the "defendant") by filing a complaint in the Supreme Court of the State of New York, County of Nassau. The complaint, dated June 1, 1998, alleges that she was subjected to gender based discrimination and sexual harassment in violation of the New York State Human Rights Law, N.Y. McKinney's Executive Law §§ 290 *et seq.* ("NYHRL") and Chapter 21 of the Nassau County Administrative Code §§ 21–9.0 *et seq.* (the "Nassau Code"). On August 5, 1998 the defendant removed the case to this Court.

Presently before the Court are: (1) the motion by the defendant for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."); and (2) the motion by the defendant for attorneys' fees and costs.

## I. BACKGROUND

In 1983, the plaintiff began her employment as an Executive with Baker's Aid, a company specializing in manufacturing food and ingredient products. Baker's Aid was acquired by DCA Food Industries/Allied Lyon ("DCA") in January 1994. In 1995, DCA was acquired by Kerry. From January 1, 1995 to July 18, 1997, the plaintiff was employed by Kerry as a Vice President. The plaintiff's primary job responsibility was to supervise the day-to-day operations of Baker's Aid.

The plaintiff contends that she was compelled to resign on July 18, 1997 due to the constant and unrelenting sexual harassment by her supervisors. Specifically, the plaintiff alleges that she was told by the chairman of DCA that "it is a good thing you have a contract, because women do not stand a chance of holding your type of position in any of the Kerry Companies." The plaintiff also asserts that Kerry initiated and sustained a course of conduct designed to reduce her authority and to eventually force her to terminate her employment. For example, the plaintiff charges that Kerry demanded that she work seven days a week; reneged on a promise for a promotion; and failed to make-good on a promised bonus. In addition, the plaintiff claims that she was sub-

jected to offensive and derogatory language by supervisors. For example, the plaintiff claims that she was asked whether she was "an idiot" by Dave Shepard, Vice President of Operations at Baker's Aid.

On March 24, 1997, the plaintiff wrote to the President of Baker's Aid and announced that she was resigning. The "Resignation Letter" stated

> In compliance with my employment agreement dated 11/18/93, I hereby submit written notice of resignation.
>
> In accordance with the provisions of the agreement, this written notice precedes an anticipated termination date not less than twelve months from date of written notice.

The plaintiff's Resignation Letter referenced the November 18, 1993 "Employment Agreement" which states, in relevant part, that:

> the Executive shall be employed by the Company and such employment shall continue subject to the provisions hereinafter contained until (and be inclusive of) the last day of the month in which the Executive reaches age 65 (sixty-five) unless it is terminated before such day by either party giving to the other not less than twelve months' notice in writing effective not earlier than December 31, 1994.

In connection with her resignation, the plaintiff signed a "Resignation Agreement" dated April 1, 1997, which states as follows:

> Dear Mary:
>
> This letter is to confirm yesterday's discussions concerning your resignation and the conditions of your severance. It will also clarify your role and responsibilities as a Baker's Aid employee during the transition period.
>
> * The Company and you have agreed to continue your service to the Company so that a transition of information regarding operations, customers, and products may be made. This transition period will not exceed six months and, at the Company's option, can be reduced. The Company will strive to shorten the transition period without jeopardizing its future.
>
> * This agreement will remain confidential to yourself and Company executives.
>
> * You will not inform customers, employees, or industry contacts of your leaving the Company until notified by Tom Daniel, President, that it is appropriate to do so.
>
> * Specific duties required of you during the transition period will be assigned to you by Tom Daniel. The duties will include, but are not strictly limited to:
>
> (1) Completing an Operations Processes Handbook;
>
> (2) Writing a troubleshooting guide for operations, service, and purchasing related issues;
>
> (3) Providing training and development assistance as required.
>
> Providing the above exceptions are met in a reasonably effective and positive manner, the Company agrees to provide continuation of salary, 1997 vacation entitlement, medical benefits, life insurance, and auto stipend from April 1, 1997, through March 31, 1998. This agreement will satisfy any obligation the Company may have under your Service Agreement dated November 18, 1993.
>
> Mary, I hope this adequately captures both the content and constructive tone of our discussion. If you are in agreement, please sign and return a copy of this letter and the attached General Release to me.

The plaintiff signed both the Resignation Agreement and the "General Release." The General Release, also dated April 1, 1997, provided that:

> For good and valuable consideration, Mary Lambertson releases and forever discharges Kerry Ingredients, Inc., from any and all claims, debts, damages financial obligations, and suits at law or in equity of every kind or nature, whether

known or unknown, which he/she has or in the future may have, in connection with his/her employment by Kerry Ingredients, Inc., or the termination of that employment. The released claims include but are not limited to all claims for breach of contract, wrongful discharge, impairment of economic opportunity, intentional infliction of emotional harm or other tort, or employment discrimination under every applicable federal, state or local law.

For good and valuable consideration, Kerry Ingredients, Inc. agrees to forever release, hold harmless and indemnify Mary Lambertson with respect to all actions occurrences or event that occurred or may occur in the future with respect to Mary Lambertson's employment with Kerry Ingredients, Inc.

The undersigned acknowledges that he/she has read and understands this General Release and that he/she has signed it freely and voluntarily.

The plaintiff's last day of work was July 18, 1997 and she continued to receive salary, full vacation and medical benefits, life insurance, and an auto stipend through March 31, 1998. Despite her executing the General Release, on July 14, 1998, the plaintiff filed a complaint against Kerry alleging that she had been subject to gender discrimination and sexual harassment in violation of the NYSHRL and the Nassau Code.

The defendant moves to dismiss the plaintiff's complaint on the ground that the two causes of action are barred by the General Release. In addition, the defendant claims that a private right of action does not exist under the Nassau Code. The defendant also argues that the plaintiff's claim for punitive damages and attorneys' fees and costs under the NYSHRL is improper as they are not authorized by the terms of that statute. Finally, the defendant moves for an award of attorneys' fees and costs.

In response, the plaintiff argues that the General Release is not enforceable as: (1) she has no experience in employment law; (2) she was pressed to sign the termination agreement; (3) she had no role in deciding the terms of her termination; (4) she was not represented by an attorney; and (5) there was no consideration. In addition, the plaintiff submits that the Nassau Code implies that a private right of action exists. Finally, the plaintiff concedes that she is not entitled to punitive damages or attorneys' fees with respect to her claim under the NYSHRL. However, the plaintiff contends that she is entitled to such damages and fees under the Nassau Code.

## II. DISCUSSION

### A. *Rule 12(c) Standard*

■ In a motion for judgment on the pleadings pursuant to Rule 12(c) of the Fed.R.Civ.P., the Court applies the same standard as it would in a motion to dismiss pursuant to Rule 12(b)(6) of the Fed. R.Civ.P. *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (citing *Ad–Hoc Comm. Of Baruch Black and Hispanic Alumni Ass'n. v. Bernard M. Baruch College,* 835 F.2d 980, 982 [2d Cir.1987] ). As such, the Court will examine the standards under Rule 12(b)(6).

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a district court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. As-*

*plundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993)) (citing *Samuels,* 992 F.2d at 15); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991)).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty,* 933 F.2d at 123; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir. 1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais* 532 F.2d 308, 311 (2d Cir.1976) [per curiam] ).

It is within this framework that the Court addresses the motions for judgment on the pleadings.

**B. *The General Release***

The plaintiff urges this Court to adopt the "totality of the circumstances" standard set forth in *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2d Cir.), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989), when analyzing the enforceability of the General Release. In *Bormann,* the Second Circuit established several factors that courts should evaluate when making a determination of whether to enforce a General Release in the context of an Age Discrimination in Employment Act ("ADEA") complaint. Specifically, the Court in *Bormann* held that the following factors should be considered:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, ... 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law, [7] whether [the] employer encourages or discourages [the] employee to consult an attorney ... and [8] whether the employee had a fair opportunity to do so.

*Id.* at 403. The Court in *Bormann* added that these factors are not exhaustive, nor must all of the factors be satisfied before a release is to be deemed enforceable. *Id.* at 403 & n. 1. While *Bormann* specifically applied to the ADEA, the "totality of the circumstances" standard has been applied to other Federal civil rights statutes. *See e.g.,* *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434 (2d Cir.1998) (applying the "totality of the circumstances" standard to Title VII.); *Nicholas v. NYNEX,* 929 F.Supp. 727 (S.D.N.Y.1996) (same).

■ Unlike the application of the "totality of the circumstances" standard, under New York law, general releases are governed by principles of contract law. *Albany Savings Bank, FSB v. Halpin,* 117 F.3d 669, 672 (2d Cir.1997) (quoting *Mangini v. McClurg,* 24 N.Y.2d 556, 562, 301 N.Y.S.2d 508, 512, 249 N.E.2d 386, 390 (1969)). "Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 463 (2d Cir.1998) (citations omitted).

"A valid release which is clear and unambiguous on its face[,] . . . even one relinquishing a discrimination claim[,] will be enforceable so long as the agreement has been knowingly and voluntarily entered into." *Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 733 (S.D.N.Y.1996) (quoting *Zveiter v. Brazilian Nat'l. Superintendency of Merchant Marine,* 833 F.Supp. 1089, 1096 (S.D.N.Y.) [internal quotation omitted], *opinion supplemented,* 841 F.Supp. 111 (S.D.N.Y.1993)); *see also Booth v. 3669 Delaware, Inc.,* 242 A.D.2d 921, 922, 662 N.Y.S.2d 642, 643 (4th Dep't 1997) (holding that "it is well settled that, where the language of a release is clear and unambiguous, effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant.") (citations omitted); *Cramer v. Newburgh Molded Products, Inc.,* 228 A.D.2d 541, 645 N.Y.S.2d 46, 47

(2d Dep't 1996) (holding that "a release will not be treated lightly, and will be set aside by a court only for duress, illegality, fraud, or mutual mistake".) (citations omitted); *Koster v. Ketchum Communications,* 204 A.D.2d 280, 611 N.Y.S.2d 298 (2d Dep't 1994) (holding that "one who executes a plain and unambiguous release cannot avoid its effect by merely stating that she misrepresented its terms.") (citations omitted); *Stone v. National Bank and Trust Co.,* 188 A.D.2d 865, 867, 591 N.Y.S.2d 609, 611 (3d Dep't 1992) (holding that "[a] release may not be treated lightly; thus, in the absence of fraud, duress, illegality or mistake, a general release bars an action on any cause of action arising prior to its execution.") (citations omitted); *Skluth v. United Merchants & Manufacturers, Inc.,* 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 282 (1st Dep't 1990) (same).

The plaintiff urges the Court to adopt the "totality of the circumstances" standard set forth in *Bormann* as it "is somewhat more stringent than the analysis called for under ordinary [New York State] contract law, for determining whether a release of discrimination claims was executed knowingly and voluntarily." *Nicholas,* 929 F.Supp. at 730. Clearly, however, where the only claims in the plaintiff's complaint are based on state law, the Court must apply general principles of New York State contract law when making a determination of whether to enforce the applicable General Release. *See e.g., id.* at 733 (applying New York contract standards to the plaintiff's claims under the NYHRL and the *Bormann* standard to the plaintiff's claim under Title VII).

■ The question of whether the language of a contract is ambiguous is considered a question of law. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 429 (2d Cir.1992). The plaintiff does not contest that the General Release at issue is clear and unambiguous. Indeed, the General Release specifically states that "Mary Lambertson releases and forever discharges Kerry Ingredients, Inc. from

any and all claims ... suits at law or in equity of every kind or nature, whether known or unknown ... in connection with ... her employment ... or the termination of that employment." The General Release goes on to add that "the released claims include but are not limited to all claims for ... employment discrimination under every applicable federal, state or local law." The Court finds that the language in the General Release was clear and unambiguous and sufficiently set forth that the plaintiff would be forever barred from filing any type of discrimination claim.

■ As the General Release is clear and unambiguous, the only issue for the Court's resolution is whether the plaintiff knowingly and voluntarily entered into the agreement. Even accepting the alleged facts of the plaintiff's complaint as true, there are no allegations indicating that the General Release was a result of duress, illegality, fraud, or mutual mistake. As stated above, the plaintiff's only argument in support of its claim that the General Release should not be honored are: (1) she has no experience in employment law; (2) she was pressed to sign the termination agreement; (3) she had no role in deciding the terms of her termination; (4) she was not represented by an attorney; and (5) there was no consideration. Under these circumstances, the Court is of the view that, as a matter of law, the defendant is unable to circumvent the clear and unambiguous language of the General Release.

Whether the plaintiff had experience in employment law, had a role in deciding the terms of her discharge, and/or was represented by an attorney are not dispositive. Even assuming that the plaintiff has no experience in employment law, had no role in deciding the terms of her discharge, and was not represented by an attorney, the Court is of the view that the General Release was not the result of duress, illegality, fraud, or mutual mistake. None of these factors taken alone or together suffice to vitiate the General Release.

With regard to the plaintiff's claim that she was "pressed" to sign the termination agreement, the only allegation put forward by the plaintiff is that she was directed "to sign and return the document no later than the day following her receipt thereof." Clearly, this "allegation" does not amount to a viable claim of duress or fraud. The plaintiff was a seasoned executive at an international company and had the opportunity to study, examine, and consult with an attorney over a 24 hour period as to whether she should sign the General Release. The Court does not view this action by the defendant as "pressing" the plaintiff to sign the General Release. To the contrary, it appears that the plaintiff had ample time to peruse the General Release and discuss it with whomever she pleased. In any event, the conduct alleged by the plaintiff does not, as a matter of law, amount to fraud or duress, a showing of illegality, or a mutual mistake.

Finally, the plaintiff's claim that the General Release was lacking in consideration is unsupported by the evidence. While it is true that "A release is not effective unless the party giving the release receives something of value to which the party was not otherwise entitled," *Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir.1992) (citing *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982)), it is clear, that at the very least, the plaintiff and the defendant mutually agreed to release each other from any and all claims arising out of the plaintiff's employment. This mutual release provides sufficient consideration to effectuate the General Release. Furthermore, there is other consideration supporting the General Release. For example, while the Employment Agreement required the plaintiff to give at least twelve months' notice in writing prior to her termination, the defendant permitted the plaintiff to work for only approximately six months. In addition, pursuant to the Resignation Agreement, the defendant agreed to pay the plaintiff her full salary though

March 31, 1998, pay her full vacation benefits and medical benefits, and continue her life insurance and auto stipend through March 31, 1998, a period of eight months after she stopped working. While the plaintiff argues that she was actually given less than other executives who resigned, it is clear that the General Release was supported by matters of value for which she was not otherwise entitled. The plaintiff received a mutual release, was permitted to leave work prior to the expiration of twelve months as required by the Employment Agreement, and received full salary and other benefits through March 31, 1998.

Given the clear and unambiguous language contained in the General Release; the strong public policy in favor of enforcing such a release; and the absence of any allegations indicating that the General Release was a result of duress, illegality, fraud, or mutual mistake, the Court upholds the terms of the General Release, and in particular, the provisions which bar the plaintiff from any and all claims of "employment discrimination under every applicable federal, state or local law." Accordingly, because the terms of the General Release expressly bar this type of employment discrimination claim, the Court grants the defendant's motion for judgment on the pleadings dismissing the complaint.

As the Court has determined that the General Release bars the plaintiff from proceeding on both of her causes of action, the Court declines to address the issues of whether a private right of action exists under the Nassau Code, and if so, whether the Code permits punitive damages and attorneys' fees and costs.

## C. *Sanctions*

In its motion for judgment on the pleadings, the defendant states that "based on the frivolous nature of plaintiff's Verified Complaint, Kerry should be awarded its fees and costs incurred with respect to the preparation and filing of the instant motion." While the defendant does not cite any case law or statutory authority in support of its request, the Court assumes that the request is made pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Rule 11 provides, in relevant part, that:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction. . . .

(Fed.R.Civ.P.11).

However, motions for sanctions under Rule 11 must "be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (b)." Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995). In this case, there was no separate motion made requesting this relief. Accordingly, the motion for attorney's fees and costs, brought in the nature of a request for sanctions, and which was made in conjunction with the motion for judgment on the pleadings and not separately, is denied without prejudice and with leave to renew in compliance with the requirements of Rule 11.

## III. CONCLUSION

Having reviewed the parties' submissions, it is hereby

ORDERED, that the defendant's motion for judgment on the pleadings dismissing the complaint is **GRANTED;** and it is further

ORDERED, that the defendant's motion for attorney's fees and costs is **DENIED,** without prejudice; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**