**INFORMATION SUPERHIGHWAY, INC., Plaintiff,**

v.

**TALK AMERICA, INC. and America Online, Inc., Defendants.**

**No. 03 Civ.1995 (RWS).**

United States District Court, S.D. New York.

July 30, 2003.

---

Daniel A. Eigerman, New York, NY, for Plaintiff.

Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, New York, NY (Larry B. Miller, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Defendants Talk America, Inc. ("Talk America") and America Online, Inc. ("AOL") have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff Information Superhighway, Inc. ("ISI"), which alleges violations of the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law § 360–1, and common law unfair competition.

For the following reasons, the motion is denied.

### Prior Proceedings

On November 1, 1999, ISI filed a suit entitled *Information Superhighway v. Talk.com, Inc.*, 99 Civ. 10977 (S.D.N.Y.) (JGK). Talk.com, Inc. is the parent corporation of Talk America. That action alleged service mark infringement, unfair competition and service mark dilution. Several of ISI's service marks were mentioned in the complaint, including "telsave.com." The action was settled in April 2000. On April 6, 2000, the parties executed a release in which ISI relieved Talk.com, Inc. of liability for various claims, discussed below. Judge Koeltl signed the Consent Final Judgment and Permanent Injunction in the action on April 13, 2000.

On March 21, 2003, ISI commenced this action by filing a complaint against Talk America and AOL, alleging that the defendants violated the Lanham Act, 15 U.S.C. § 1125(a), New York Business Law § 360–1, and common law unfair competition by using the registered mark Telsave, and the domain name "Telsave.com." ISI's initial complaint alleged that defendants had been improperly appropriating the Telsave domain name and keyword since 1998. On May 12, 2003, defendants moved to dismiss the complaint, primarily on the basis of a release executed by ISI on April 6, 2000 which precludes ISI from bringing certain claims against Talk.com, Inc. The release provided that ISI and its successors and assigns,

hereby fully and forever release, acquit and discharge Talk.com Inc., . . . and its officers, directors, principals, employees, agents, licensees, entities acting in concert with it, successors and assigns ("Releasees") from any and all claims, obligations and demands that have been asserted or could have been asserted by any of the Releasors against any of the Releasees relating to any use of, or any application to register or registration of, any trademark, service mark, trade name, Internet domain name or other source identifier consisting of or incorporating "Talkcom," "Talkcom.com,"

"Talk.com," "Talk," "TelSave," "Tel–Save," or any variation thereof or term confusingly similar thereto ...

On May 16, 2003, ISI filed an Amended Complaint, making three changes to the initial complaint. First, ISI has dropped the allegation that the defendants had been misusing the "Telsave" domain name and mark since 1998. Second, the amended complaint now refers to the April 6, 2000 release. Third, ISI seeks relief based on the use of the Telsave domain name and mark only for the period after April 7, 2000.

On June 3, 2003, defendants moved to dismiss the Amended Complaint, arguing that the use of the "Telsave" mark was settled in the prior litigation, that the Release bars any claims by ISI relating to Telsave for the indefinite future, and that ISI has acquiesced in the Defendant's use of the Telsave mark. ISI filed opposition papers on June 16, 2003, and the defendants replied a day later. The motion was marked as submitted on June 18, 2003.

*Facts*

The following facts are drawn from ISI's complaint as befits a motion to dismiss and do not constitute findings of fact by the Court.

Plaintiff ISI is a reseller of long distance services. ISI owns the Internet domain name and mark "telsave.com," which it uses as a means of advertising and making available its services to volume telephone users. Defendant Talk America is also a reseller of long distance and other telephone services and is a direct competitor of ISI in the same market. Defendant AOL is the nation's largest internet service provider, with over 30,000,000 subscribers. AOL also owns a major stake in Talk America.

AOL internet users may access web sites in one of two ways. First, a user can type in any domain name into the web browser. Second, a user may type in an AOL "keyword" (which may be more than one word), which will function as a shortcut to a given registered domain.

ISI alleges that from an unspecified date (perhaps as early as 1998) until March 10, 2003, AOL users that typed in the domain "telsave.com" or the keyword "Telsave" were diverted to the website of Talk America.[1] It was therefore not possible to reach ISI's web site by entering either ISI's domain name or the keyword associated with ISI's mark "Telsave."

In late February 2003, ISI forwarded to Talk America and to AOL a preliminary draft of its complaint. On or about March 10, 2003, AOL began to allow users typing in the domain name "telsave.com" or the keyword "Telsave" to access ISI's web site. AOL did not, however, communicate with ISI in any form about this development.

*Discussion*

In reviewing a 12(b)(6) motion, courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 122 (S.D.N.Y.1988). The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

**1.** ISI does not indicate whether it had previously registered the keyword "Telsave" with AOL, nor does it explain the procedure by which a keyword is created.

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996).

Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000).

### The Meaning of the Release is Ambiguous

The defendants argue that the release bars all claims relating to the Telsave mark, including any claims which might arise from conduct occurring after the April 6, 2000 release was signed. ISI argues conversely that the language of the release which covers claims "that have been asserted or could have been asserted" by ISI against the defendants is intended to cover only claims that have their origin in pre-release conduct, even if such claims are asserted after the release is signed.

A release is a form of contract and "is governed by principles of contract law." *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir.2001) (*quoting Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)) (applying New York law). Where a contract is ambiguous, it cannot be decided as a matter of law on a motion to dismiss. *See Zuckerwise v. Sorceron, Inc.*, 289 A.D.2d 114, 115, 735 N.Y.S.2d 100, 102 (1st Dep't 2001) (*citing Nash v. Junction Partners*, 269 A.D.2d 228, 702 N.Y.S.2d 817 (1st Dep't 2000)). Whether a contract is ambiguous is a question for the court. *Golden Pacific*, 273 F.3d at 514 (*citing Van*

*Wagner Adver. Corp. v. S & M Enters.*, 67 N.Y.2d 186, 501 N.Y.S.2d 628, 492 N.E.2d 756 (N.Y.1986); *Fanger v. Manhattan Life Ins. Co.*, 273 A.D.2d 438, 709 N.Y.S.2d 622 (2d Dep't 2000)).

Under New York law, "a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Id.* at 515, (*citing Stone v. Nat'l Bank & Trust Co.*, 188 A.D.2d 865, 591 N.Y.S.2d 609 (3d Dep't 1992)). A release will not be given effect unless it contains an "explicit, unequivocal statement of a present promise to release [a party] from liability." *Id.* (*quoting Gillaizeau*, 766 F.2d at 713). Moreover, because the "law looks with disfavor upon agreements intended to absolve [a party] from the consequences of his [wrongdoing]," a release which purports to excuse a party from responsibility for misconduct is subject to the "closest of judicial scrutiny." *Id.* (*quoting Abramowitz v. N.Y. Univ. Dental Ctr. Coll. of Dentistry*, 110 A.D.2d 343, 494 N.Y.S.2d 721, 723 (2d Dep't 1985)). Under this standard of scrutiny, therefore, an ambiguous release may not form the basis for a motion to dismiss. The language of a contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* at 516, (*quoting Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138–139 (2d Cir.2000)) (applying New York law).

The April 6, 2000 release is capable of more than one meaning. On the one hand, it is plausible to interpret it as defendants do, and to construe "all claims ... that ... could have been asserted" as encompassing claims which are based on conduct which post-dates the signing of the release. But the choice of the conditional

past perfect tense to describe the universe of unasserted claims covered by the release, rather than specifying those claims that "may be asserted," also lends plausibility to ISI's interpretation that the defendants are only released from claims based on conduct which occurred before the signing of the release. Numerous courts have held general releases inapplicable to conduct subsequent to the execution of the release. *See, e.g., Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1485 (2d Cir. 1995) ("Although the releases shield the [defendants] from any liability for any conduct through their effective dates, they do not protect the [defendants] from liability arising from any subsequent conduct."); *Schneider v. Revici,* 817 F.2d 987, 993 (2d Cir.1987) ("To 'release ... from all liabilities' can plausibly be understood only to relinquish claims currently existing, rather than to promise not to sue in the future on claims that may subsequently arise."); *National Council of Young Israel v. Wolf,* 963 F.Supp. 276, 282 (S.D.N.Y.1997) (release would not be complete defense to events subsequent to the execution of a general release).

Given these two plausible meanings, the release is ambiguous. "Both parties have offered reasonable interpretations regarding the scope of the release, and these interpretations cannot be resolved on a motion to dismiss." *In re Clinton Street Food Corp.,* 254 B.R. 523, 535 (Bankr. S.D.N.Y.2000).

The defendants cite caselaw for the proposition that general releases which cover "any and all claims", or which employ similar language, necessarily apply to prospective as well as retrospective conduct. *See Volk v. Liggett Group, Inc.,* No. 96 Civ.1921, 1997 WL 107458 (S.D.N.Y. 1997); *Skluth v. United Merchants and Mfrs., Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d

280 (1st Dept.1990). Neither case holds so broadly. The release at issue in *Volk* covered "any and all claims Employee *may have* against the Employer." 1997 WL 107458, at *2 (emphasis added), rather than claims the employee could have asserted. The court held that the release covered "any claims 'which might arise subsequent to the date of execution.'" *Id.* at 4 (*quoting Skluth,* 559 N.Y.S.2d at 282). It is reasonable to interpret the holding in *Volk,* and by extension *Skluth,* to mean that the release encompasses any claims that the releasor may have been able to assert after executing the release based on conduct occurring beforehand. Construing it otherwise would risk conferring an indefinite prospective immunity on the releasee that may not have been intended by the parties.

### ISI Did Not Clearly Acquiesce to the Use of Its Mark By Defendants

The defendants argue that the release bars ISI's actions by the doctrine of estoppel by acquiescence. Under this doctrine, which is similar to laches, "[w]here a person entitled to exclusive use of a trademark ... acquiesces in the latter's use, ... a court of equity has the discretionary power ... to deny injunctive relief or an accounting." *Profitness Physical Therapy Center v. Pro–Fit Orthopedic and Sports Physical Therapy, P.C.,* 314 F.3d 62, 67 (2d Cir.2002) (*quoting Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686, 703 (2d Cir.1970)). The doctrine of acquiescence turns on "a consideration of the circumstances of each particular case and a balancing of the interests and equities of the parties." *Id.* (*quoting Carl Zeiss,* 433 F.2d at 703). The elements of acquiescence are "(1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excus-

able; and (3) the delay caused the defendant undue prejudice." *Id.* (*quoting Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir.2002)). Acquiescence is implied by active consent, which is "conduct on the plaintiff's part that amount[s] to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." *Id.* at 68 (*quoting Carl Zeiss,* 433 F.2d at 704).

█ The defendants argue that the settlement of the previous action and its accompanying release "cannot but mean that [ISI] gave up all claims to defendants' use of Telsave on the internet." Def. Opp. Mem. at 8. However, nothing in either the Consent Final Judgment and Permanent Injunction or the 2000 release constitutes an active representation of ISI's intent not to assert a claim for trademark infringement subsequent to the execution of the release. The Consent Final Judgment, reflecting the terms of the settlement to which the parties agreed, makes no reference to Telsave or to any related marks. The release includes Telsave in the list of trademarks and domain names about which ISI was precluded from bringing claims. But as discussed above, it is by no means unequivocally clear that by entering into the release, ISI was agreeing to forgo asserting any right or claim to the Telsave mark or domain name after the date of the release. While the parties could have been clearer about the disposition of the Telsave mark following the settlement and release, the defendants may not properly interpret ISI's silence as active consent to the use of ISI's mark.

### Conclusion

Because the terms of the April 6, 2000 release are ambiguous and because ISI has not clearly acquiesced in the use of its

Telsave trademark and domain name, the release does not bar ISI from bringing suit for conduct subsequent to the release. Accordingly, the defendant's motion to dismiss ISI's complaint is denied. The parties are directed to meet and confer on an appropriate discovery schedule.

It is so ordered.