**Lynn NICHOLAS, Lester Johnson and Julian Gittens, Plaintiffs,**

v.

**NYNEX, INC., Defendant.**

**No. 94 Civ. 5191 (WCC).**

United States District Court, S.D. New York.

June 17, 1996.

Carton & Rosoff, P.C., Harrison, NY, for Plaintiff Julian Gittens; David M. Rosoff, of counsel.

NYNEX Corporation, New York City, for Defendant; Steven M. Martin, of counsel.

WILLIAM C. CONNER, Senior District Judge:

On July 15, 1994, plaintiffs Lynn Nicholas, Lester Johnson and Julian Gittens filed this action against defendant NYNEX, Inc. ("Nynex"). Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under § 296 of the New York Executive Law. Defendant has made a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, dismissing the claims of plaintiff Gittens. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

The following undisputed facts are taken from the parties' Rule 3(g) statements, from affidavits submitted by the parties and from plaintiff's deposition testimony. Plaintiff Gittens began working at Nynex in 1964. In 1986, he was promoted to the position of Systems Analyst. During 1992, in order to carry out a reduction in its workforce, Nynex evaluated all of its employees based on their position, experience, skills, knowledge, performance and potential. The employees were then divided into four "bands," and Nynex selected employees for termination in order of inverse seniority within each band. On October 12, 1992, Nynex informed Gittens that it had placed him in Band 4 and that he would be removed from the payroll in December 1992. Nynex also gave Gittens a packet of materials that included a document titled "Separation Agreement and Release." Gittens was entitled to $45,375.00 in separation pay. In addition, Nynex offered him a bonus of $15,125.00 if he signed the release. On December 9, 1992, Gittens did so. His

employment at Nynex ceased on December 11, 1992. On or about September 30, 1993, Gittens filed a charge of discrimination with the EEOC, which issued a notice of right to sue dated April 13, 1994.

Plaintiff alleges that throughout his employment at Nynex, he was denied promotions, salary increases and bonuses because he is black. He contends that if he had received the promotions to which he was entitled, he would have been placed in a higher band and would not have been included in the group of employees who were terminated. He asserts claims under Title VII and N.Y.Exec.L. § 296 for disparate treatment and intentional discrimination on the basis of his race. Defendant seeks summary judgment on the grounds that plaintiff signed a valid release waiving these claims and that in any event, plaintiff's Title VII claims are time-barred.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law...." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.,* at 248–49, 106 S.Ct. at 2510–11. In evaluating a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.,* at 255, 106 S.Ct. at 2513–14.

█ Under Title VII, an employee may waive a claim for discrimination so long as the waiver is made knowingly and voluntarily. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 & n. 15, 94 S.Ct. 1011, 1021–22 & n. 15, 39 L.Ed.2d 147 (1974); *Bormann v. AT & T Communications, Inc.,* 875 F.2d

399, 402 (2d Cir.), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Baba v. Warren Mgmt. Consultants, Inc.,* 882 F.Supp. 339, 343 (S.D.N.Y.), *aff'd,* 1995 WL 722242 (2d Cir. Nov. 21, 1995). In *Bormann,* the Second Circuit adopted a "totality of the circumstances" standard, which is somewhat more stringent than the analysis called for under ordinary contract law, for determining whether a release of discrimination claims was executed knowingly and voluntarily.[1] *See Bormann,* 875 F.2d at 403. The Court also articulated a number of factors that courts should evaluate in conducting this inquiry. These factors are:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, ... 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law, [7] whether [the] employer encourages or discourages [the] employee to consult an attorney ... and [8] whether the employee had a fair opportunity to do so.

*Id.* (citations omitted). These factors are not exhaustive, nor must all of the factors be satisfied before a release is enforceable. *See Bormann,* 875 F.2d at 403 & n. 1.; *Baba,* 882 F.Supp. at 344. "The essential question is 'whether in the totality of the circumstances, the individual's waiver of his right can be characterized as "knowing and voluntary." ' " *Baba,* 882 F.Supp. at 344 (quoting *Laniok v. Advisory Comm'ee,* 935 F.2d 1360, 1368 (2d Cir.1991)).

█ In this case, after examining the undisputed facts in light of the standard set forth in *Bormann,* we conclude that plaintiff signed the release knowingly and voluntarily. First, the release is drafted in clear, compre-

---

1. Although *Bormann* dealt with the waiver of claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* the same standard applies to waivers of Title VII claims.

*See Bormann,* 875 F.2d at 402 ("[W]e find analogizing the ADEA to Title VII appropriate in this context."); *Baba,* 882 F.Supp. at 343.

hensible and unambiguous language. It provides, in pertinent part, that:

4. I [Gittens] ... understand that, pursuant to the Older Workers Benefit Protection Act of 1990, I have the right to consult with an attorney before signing this Separation Agreement and Release, I have 45 days to consider the Release before signing it, and I may revoke the Release within 7 calendar days after signing it.

5. I realize that there are various State and Federal laws that govern my employment relationship with the Company [Nynex] and/or prohibit employment discrimination on the basis of ... race ... and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. Such laws include, but are not limited to, Title VII of the Civil Rights Act of 1964.... In consideration of the Release Bonus provided for in this Agreement, I intend to give up any rights I may have under these or any other laws with respect to my employment and termination of employment at the Company and acknowledge that the Company ... has not ... discriminated against me....

6. ... [O]n behalf of myself, my heirs, executors, administrators, successors and assigns, I release and discharge NYNEX Corporation ... from any and all claims, including claims for attorney's fees and costs, charges, actions and causes of action with respect to, or arising out of, my employment or termination of employment with the Company. This includes, but is not limited to, claims arising under federal, state, or local laws prohibiting ... race ... discrimination or claims growing out of the Company's termination of its employees. With respect to any charges that have been or may be filed concerning events or actions relating to my employment or the termination of my employment and which occurred on or before the date of this agreement, I additionally waive and release any right I may have to recover in any lawsuit or proceeding brought by me....

\*      \*      \*      \*      \*      \*

BY SIGNING THIS SEPARATION AGREEMENT AND RELEASE, I STATE THAT: I HAVE READ IT; I UNDERSTAND IT AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS; I AGREE WITH EVERYTHING IN IT; I AM AWARE OF MY RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING IT; AND I HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.

It is difficult to imagine language that could inform plaintiff more clearly of the nature of his rights and of the fact that he is relinquishing those rights by signing the release.

Moreover, Gittens is a high school graduate who has completed subsequent training in computer programming. *See* Transcript of Deposition of Julian H. Gittens, Jr. ("Tr. ___"), at 6, 9–10. At the time he was terminated, plaintiff occupied a management position at Nynex and was responsible for leading teams of programmers on particular projects. (Tr. 12–13, 20) His education and business experience certainly indicate that he is capable of understanding this release. *See Bennett v. Independence Blue Cross,* 1993 WL 15603, at \*2 (E.D.Pa. Jan. 13, 1993).

In addition, plaintiff was given the release on October 12, 1992, and did not sign it until December 9, 1992. Consequently, plaintiff had nearly two months in which to decide whether to execute the release. This length of time is clearly sufficient to enable plaintiff to make a considered choice. *See Glugover v. Coca–Cola Bottling Co. of New York,* 1993 WL 312269, at \*9 (S.D.N.Y. Aug. 12, 1993), *aff'd,* 60 F.3d 810 (1995).

Furthermore, the release itself states, in two places, that plaintiff had the right to consult an attorney before signing it. Not only did plaintiff have a fair opportunity to consult with an attorney between October 12 and December 9, but he has acknowledged that he met with an attorney during that period in order to discuss the release. (Tr. 62–65)

Finally, the release clearly states that as consideration for signing the release, plaintiff received $15,125.00 in addition to his separation pay. *See* Release, at ¶¶ 3, 5. Plaintiff

has acknowledged that he was not entitled to that sum if he did not sign the release. (Tr. 61)

The only *Bormann* factor that may favor plaintiff is his role in deciding the terms of the release. Plaintiff contends that Nynex offered him the release, which appears to be a standardized form agreement, on a "take it or leave it" basis and that he was not afforded an opportunity to negotiate any of its terms. Defendant asserts that plaintiff could have negotiated the terms of the release but chose not to. Hence, it appears that a question of fact exists regarding whether plaintiff had the opportunity to play a role in deciding the terms of the release.

This question of fact does not, however, preclude us from deciding, as a matter of law, that plaintiff executed the release knowingly and voluntarily. *See Bormann,* 875 F.2d at 403 n. 1; *Frumkin v. Int'l Business Machines Corp.,* 801 F.Supp. 1029, 1043 (S.D.N.Y.1992). Even if we were certain that plaintiff could not have negotiated the terms of the release, we would conclude that plaintiff chose to sign the release knowingly and voluntarily because the other *Bormann* factors overwhelmingly favor defendant. Therefore, some doubt as to whether plaintiff could have negotiated the terms of the release, had he attempted to, is simply not material.

Plaintiff advances three arguments in support of his contention that the release is invalid. First, he asserts that the release is ambiguous. He contends that consequently, he was not aware that he was relinquishing his right to pursue claims arising out of events that occurred during his employment. Plaintiff acknowledges, however, that he understood that he was giving up his right to pursue claims against Nynex growing out of his termination. (Tr. 54, 62, 65, 67, 72) In light of the plain and unambiguous language of the release, which refers repeatedly to claims arising from plaintiff's "employment or termination of employment," plaintiff's argument is simply untenable.[2]

Next, plaintiff argues that the release is voidable because defendant fraudulently induced him to sign it. Plaintiff contends that he would not have signed the release if defendant had not concealed from him the existence of pervasive discriminatory practices that denied him promotions throughout his career and that resulted in his placement in Band 4 and his termination. In order for plaintiff to establish that he was fraudulently induced to sign the release, however, he must demonstrate, *inter alia,* that defendant made a misrepresentation to him or actively concealed a material fact from him. *See Joint Venture Asset Acquisition v. Zellner,* 808 F.Supp. 289, 302 (S.D.N.Y.1992). Plaintiff has not identified a single instance in which defendant made a misrepresentation to him or actively concealed the existence of discrimination against him. (Tr. 67–69) Plaintiff's wholly conclusory assertions of fraudulent concealment—which consist of nothing more than plaintiff's contention that he did not know about the alleged discrimination so defendant must have concealed it from him—are not sufficient to create a question of fact on this issue.

Third, plaintiff argues that the release is invalid because he signed it under economic duress. He asserts that he was forced to sign the release because he anticipated difficulty in finding a new job and feared that he would not be able to make his mortgage payments while he was out of work. In order to establish that the release is voidable on the ground of economic duress, plaintiff must show that "the agreement was obtained: (1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." *Frumkin,* 801 F.Supp. at 1044 (internal quotations omitted); *Joseph v. Chase Manhattan Bank, N.A.,* 751 F.Supp. 31, 35 (E.D.N.Y.1990). Plaintiff has failed to demonstrate that a question of fact exists on

---

**2.** Because the language of the release at issue here is unambiguous, this case is distinguishable from cases in which the courts have declined to enforce ambiguous releases on the ground that

the plaintiffs did not knowingly waive their rights. *See, e.g., Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1341–42 (N.D.Ill.1985).

this issue. Plaintiff faced termination of his employment with Nynex regardless of whether he signed the release. His choice, therefore, was between departing with $60,500 or with $45,375 and the right to bring any discrimination claims that he might have. While this choice is unlikely to be an easy one for someone facing financial difficulties and the uncertainties of unemployment, there is no indication that plaintiff was unable to make the decision of his own free will or that his circumstances were so straitened that they permitted no other alternative but signing the release. *See EEOC v. American Express Publishing Corp.,* 681 F.Supp. 216, 219 (S.D.N.Y.1988) ("[T]he fact that a party faces a difficult choice—between additional benefits or pursuing his legal rights—does not alone indicate lack of free will.")

Defendant is therefore entitled to summary judgment dismissing plaintiff's claims under Title VII on the ground that plaintiff knowingly and voluntarily released those claims.[3]

■■■■■ Furthermore, plaintiff's claims under N.Y.Exec.L. § 296 must be dismissed on the same ground. Under New York state law, "[a] valid release which is clear and unambiguous on its face[,] ... even one relinquishing a discrimination claim[,] will be enforceable so long as the agreement has been knowingly and voluntarily entered into." *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine,* 833 F.Supp. 1089, 1096 (S.D.N.Y.) (internal quotation omitted), *opinion supplemented,* 841 F.Supp. 111 (S.D.N.Y.1993); *Skluth v. United Merchants & Mfrs., Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (1990), *appeal withdrawn,* 79 N.Y.2d 976, 583 N.Y.S.2d 189, 592 N.E.2d 797 (1992). "A release may, of course, be attacked for being the product of fraud, duress or undue influence." *Skluth,* 163 A.D.2d 104, 559 N.Y.S.2d at 282. Because, as we explained above, plaintiff's assertions of ambiguity, fraud and duress do not create a question of fact regarding the validity of the release and because we have already determined, under the more stringent *Bormann* standard, that plaintiff signed the release knowingly and voluntarily, defendant is entitled to summary judgment dismissing plaintiff's claims under N.Y.Exec.L. § 296 on the ground that plaintiff knowingly and voluntarily released those claims.

### CONCLUSION

For the foregoing reasons, we grant defendant's motion for summary judgment dismissing the claims of plaintiff Julian Gittens.

SO ORDERED.

---

**3.** Defendant also contends that even if plaintiff did not sign the release knowingly and voluntarily, he has ratified the release by retaining the release bonus. (Tr. 72) This argument finds support in the case law of several other circuits concerning the ratification of releases of age discrimination claims. *See, e.g., O'Shea v. Commercial Credit Corp.,* 930 F.2d 358, 362–63 (4th Cir.), *cert. denied,* 502 U.S. 859, 112 S.Ct. 177, 116 L.Ed.2d 139 (1991); *Grillet v. Sears, Roebuck & Co.,* 927 F.2d 217, 220–21 (5th Cir.1991). The Second Circuit, however, has yet to address this issue. *See Chaput v. Unisys Corp.,* 964 F.2d 1299, 1302–03 (2d Cir.1992) (dismissing appeal that presented this question for lack of appellate jurisdiction). Because we have concluded that plaintiff signed the release knowingly and voluntarily, we need not delve into this question.

Furthermore, because we have granted summary judgment for defendant based on plaintiff's execution of the release, we need not discuss defendant's contention that plaintiff's claims are time-barred.