**Marcella LARAMEE, Plaintiff,**

v.

**THE JEWISH GUILD FOR THE BLIND a/k/a JGB Health Facilities, Inc., and Local 1199, Drug, Hospital and Health Care Employees Union, SEIU AFL–CIO, Defendants.**

**No. 99 Civ. 1097 SHS.**

United States District Court, S.D. New York.

Oct. 29, 1999.

**358**

Josephine Gottesman, New York City, for plaintiff.

Tarik Fouad Ajami, Levy, Ratner & Behroozi, P.C., New York City, for defendant.

## OPINION & ORDER

STEIN, District Judge.

Defendant The Jewish Guild for the Blind ("JGB") has moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiff's claims for violations of the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act (the "RHA"). Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York State Human Rights Law (the "HRL").[1] Because this Court finds that plaintiff "knowingly and voluntarily" released defendant from these claims, defendant's motion is granted, and plaintiff's complaint is dismissed. In addition, JGB's motion for sanctions against plaintiff and her attorney pursuant to Fed.R.Civ.P. 11 is denied.

### Facts

Laramee was employed by JGB as a secretary from 1982 until March 13, 1998. (Complaint at ¶ 4, Opp. at 10). Laramee alleges that, beginning in early 1996, she was "harassed and criticized in an ongoing manner by both supervisors and co-workers" at JGB. (Complaint at ¶ 12). Specifically, she contends that unspecified individuals (1) removed from her desk and publically displayed sanitary products and undergarments; (2) made unspecified disparaging remarks about her weight, hair, eyeglasses, and dress; and (3) pressured her to join Weight Watchers. (*Id.*). Moreover, Laramee contends that she has been "diagnosed with morbid obesity" and that JGB has discriminated against her on the basis of this disability or perceived disability. (*Id.* at ¶¶ 4–6). In particular, Laramee alleges that JGB has failed to reasonably accommodate her disability by refusing to provide her with an appropriate chair for switchboard work, a smoke-free environment, and a suitable parking area. (*Id.* at ¶ 13).

---

1. While the current motion was being briefed, plaintiff voluntarily withdrew her claim against the Jewish Guild for the Blind for violations of the Labor Management Relations Act (the "LMRA"). *See* letter dated May 20, 1999 attached as Exh. 1 to Josephine Gottes-man's affirmation. Moreover, Laramee has withdrawn her claim against Local 1119 for breach of duty of fair representation pursuant to a stipulation so ordered by this Court on April 1, 1999, and Local 1119 is thus no longer a defendant in this action.

Sometime in mid–1997, Laramee requested that Local 1119 represent her in an arbitration of a claim brought against JGB concerning JGB's allegedly discriminatory treatment of Laramee. (*Id.* at ¶ 22). As required by the collective bargaining agreement, the union voted on whether to arbitrate Laramee's grievance and, by a majority vote, the matter was accepted for arbitration. (*Id.* at ¶ 23).

On March 13, 1998, Laramee resigned from JGB "for personal reasons." (*Id.* at ¶ 26). She received a proposed severance agreement (the "Agreement") from JGB two weeks later, (*Id.* at ¶ 28), and signed the Agreement three and one-half weeks after receiving it. (Id. at ¶ 31). At all times during this period, Laramee was represented by counsel. Pursuant to the Agreement, Laramee received 20 weeks of severance pay and one year of health care coverage. (*Id.* at ¶ 27; Agreement at ¶¶ 2, 3). The Agreement also provides that:

> Laramee hereby releases and discharges the Guild from any liabilities, obligations or claims of any nature whatsoever, except for the specific obligations of the Guild under this Agreement, including, but not limited to, claims arising out of or in connection with her employment by the Guild or the termination thereof.... Laramee acknowledges and agrees that she is entering into this Agreement freely and voluntarily and with a full understanding of its terms. Laramee further acknowledges and agrees that she has been fairly represented by the Union.

(Agreement at ¶¶ 6, 8). In return, the union agreed to withdraw with prejudice the arbitration that it had commenced on behalf of Laramee. (*Id.* at ¶ 7).

*Discussion*

I. *Motion to Dismiss*

JGB has moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the complaint on the grounds that Laramee waived the claims that she has now brought against JGB when she signed the Agreement.

When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. *See Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Accordingly, the Court may consider the terms of the Agreement in deciding this motion.

■ Pursuant to New York law, the validity of a release is governed by principles of contract law, and a release that is clear and unambiguous and which is knowingly and voluntarily entered into will be enforced. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir.1998) (citing *Skluth v. United Merchants & Mfrs., Inc.*, 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 282 (1st Dept.1990)). The essential inquiry in determining the validity of a release of a claim brought pursuant to the federal civil rights statutes – other than the Older Worker's Benefit Protection Act (the "OWBPA") – is whether, considering the "totality of the circumstances," the individual's waiver of his or her right can be characterized as "knowing and voluntary." *See Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 402–03 (2d Cir.1989); *Baba v. Warren Management Consultants, Inc.*, 882 F.Supp. 339, 344 (S.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir.1995). This standard "is somewhat more stringent than the analysis called for under ordinary [New York State] contract law[ ] for determining whether a release of discrimination claims was executed knowingly and voluntarily." *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp .2d 163, 168 (E.D.N.Y.1999) (quoting *Nicholas v. Nynex, Inc.*, 929 F.Supp. 727, 730 (S.D.N.Y.1996)). Accordingly, if Laramee has waived her federal claims, she has also waived her New York State law claims.

■ In determining whether under the totality of the circumstances an individual's waiver was knowing and voluntary, the

following factors must be considered: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds any benefits to which the employee was already entitled by contract or law; (7) whether an employer encouraged or discouraged the employee to consult an attorney; and (8) whether the employee had a fair opportunity to consult with an attorney. *See Bormann,* 875 F.2d at 403. These factors are neither exhaustive nor must all of the factors be satisfied before a release is enforceable. *Nicholas,* 929 F.Supp. at 730 (citing *Bormann,* 875 F.2d at 403, n. 1).

The balance of those factors in this case weighs heavily in favor of upholding the validity of the release. The first factor, plaintiff's education and business experience, neither favors nor disfavors plaintiff. Although there is some dispute as to Laramee's degree of sophistication, accepting all of plaintiff's allegations as true – that Laramee was employed in a secretarial position and had a high school education – this factor, while not weighing heavily in JGB's favor, does not warrant invalidating the release. *See Reid v. IBM Corp.,* No. 95–1755, 1997 WL 357969, at *5 (S.D.N.Y. June 26, 1997) (business studies in high school and community college and 10 years managerial experience sufficient); *Nicholas,* 929 F.Supp. at 731 (high school diploma and management experience sufficient).

Second, Laramee had slightly less than one month in which to review the release before she signed it. This amount of time is deemed sufficient and weighs in favor of upholding the validity of the release. *See Pampillonia,* 138 F.3d at 463; *Dewey v. PTT Telecom Netherlands, US, Inc.,* No. 94CIV.5983, 1995 WL 542447, at *2

(S.D.N.Y. Sept. 12, 1995), *aff'd,* 101 F.3d 1392 (2d Cir.1996); *Evans v. Waldorf–Astoria Corp.,* 827 F.Supp. 911, 913 (E.D.N.Y.1993), *aff'd,* 33 F.3d 49 (2d Cir. 1994).

Third, even assuming as true Laramee's allegation that she did not have an opportunity to negotiate the terms of the release, the absence of this factor alone does not create an issue of fact as to voluntariness. *See, e.g., Bormann,* 875 F.2d at 403 n. 1; *Branker v. Pfizer, Inc.,* 981 F.Supp. 862, 866–67 (S.D.N.Y.1997); *Reid,* 1997 WL 357969, at *5; *Nicholas,* 929 F.Supp. at 732.

Fourth, the release at issue is a mere three pages of text and is written in plain English. *See, e.g., Dewey,* 1995 WL 542447, at *2; *Evans,* 827 F.Supp. at 913. The stipulation of settlement and release state plainly and simply that plaintiff is waiving her right to bring any action against JGB pertaining to the conditions or termination of her employment. Moreover, although plaintiff contends that the release is deficient because it did not identify by name the particular claims that she was waiving, this Court disagrees. Many of the cases cited by plaintiff in support of her contention involve age discrimination claims where the OWBPA governs. Pursuant to the OWBPA, specified requirements must be complied with in order for an agreement to validly release age discrimination claims. These requirements, however, have not been extended to claims brought pursuant the statutes at issue here. *See, e.g., Tung v. Texaco Inc.,* 150 F.3d 206, 208–09 (2d Cir.1998); *Skluth v. United Merchants & Mfrs., Inc.,* 163 A.D.2d 104, 107, 559 N.Y.S.2d 280, 282 (1st Dept.1990).

Furthermore, in this case, Laramee should have been aware that she was waiving any claims that she had against JGB pertaining to her allegedly discriminatory treatment at work because the release was entered into as part of a stipulation and settlement of a pending arbitration commenced by plaintiff alleging employment

discrimination. Thus, this case is distinguishable from situations where an employee is terminated and may not realize at that time that she had a claim against her employer in connection with allegedly unlawful treatment.

Fifth, plaintiff was represented by an attorney appointed by the union when she signed the release. In fact, as noted above, the release itself provides that Laramee "acknowledges and agrees that she has been fairly represented by the Union." (Agreement at ¶ 8). As stated above, the release is written in plain English and Laramee cannot avoid its consequences by claiming that she did not understand its terms when she acknowledged that she had a "full understanding of its terms." (*Id.*). Similarly, although plaintiff alleges that she was dissatisfied her attorney, she acknowledged in the release that she was fairly represented and she has withdrawn her claim against the union for a breach of the duty of fair representation.

Sixth, plaintiff received greater compensation than she would have been entitled to had she not signed the release. *See, e.g., Dewey,* 1995 WL 542447, at *2; *Skluth,* 163 A.D.2d at 105, 559 N.Y.S.2d at 281. By signing the stipulation of settlement and release, Laramee was given 20 weeks of severance pay and one year of health coverage. Assuming as true, for the purpose of this motion, that Laramee would have received the severance pay "in any case had she been laid off," (*see* Complaint at ¶ 27), this factor still supports the validity of the release. First, Laramee herself has alleged that she resigned and has nowhere alleged that she would have received 20 weeks of severance had she simply resigned without signing the release. Thus, what she would have received had she been laid off is irrelevant. Second, Laramee does not allege that she would have been entitled to one year of health care coverage had she resigned without signing the release. Consequently, it is undisputed that Laramee did receive additional compensation in excess of that to which she would have been entitled as a result of signing the release. Finally, Laramee's allegations that she did not, in fact, receive the full amount of severance to which she was entitled pursuant to the Agreement – allegations which are denied by JGB – are immaterial to this Court's determination of whether Laramee entered into the release "knowingly and voluntarily." If, as Laramee claims, JGB has not complied with the terms of the Agreement, her remedy would lie in an action alleging breach of the Agreement, not in bringing this action.

Finally, as set forth above, Laramee was, in fact, represented by an attorney when she signed the release so the seventh and eighth *Bormann* factors – whether Laramee was encouraged to seek counsel and whether she had a fair opportunity to do so – are answered in the affirmative.

In sum, the only factors which arguably weigh in plaintiff's favor or on which there are issues of fact are Laramee's education and business experience and her alleged inability to negotiate the terms of the Agreement. However, the impact, if any, of these factors is outweighed by the other factors – namely, that Laramee was represented by an attorney when she signed the Agreement, that Laramee was given ample time to review the Agreement before agreeing to sign it, and the fact that the Agreement itself is written in clear, concise English. Consequently, this Court determines that Laramee did enter into the Agreement "knowingly and voluntarily" and thereby waived any claims that she had against JGB regarding the conditions or termination of her employment.

## II. *Motion for Sanctions*

JGB has also moved pursuant to Fed. R.Civ.P. 11 for sanctions against Laramee and her attorney pursuant to (i) Fed. R.Civ.P. 11(b)(1) for filing a complaint solely to harass JGB and needlessly increase the cost of litigation and (ii) Fed. R.Civ.P. 11(b)(2) for filing a legally merit-

less claim that plaintiff is precluded from pursuing as a matter of law.

The decision of whether to award sanctions pursuant to Rule 11 is subject to the court's discretion. *See Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 166 (2d Cir. 1999); *Moss v. Moss Tubes, Inc.,* No. 96–CV–1407, 1998 WL 641362, at *7 (Sept. 9, 1998) (citing *Sanko Steamship Co., Ltd. v. Galin,* 835 F.2d 51, 53 (2d Cir.1987)). This Court finds that Laramee's complaint was not frivolous and that it was not clear under existing legal precedent that it had no chance of success or that it was filed solely for the purpose of harassment. Accordingly, JGB's motion for Rule 11 sanctions is denied.

See also, 49 F.Supp.2d 615.

*Conclusion*

For the foregoing reasons, (i) defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) is granted, and the Complaint is dismissed with prejudice, and (ii) defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied.