**Chris DIFILIPPO et al., Plaintiffs,**

v.

**BARCLAYS CAPITAL, INC., Defendant.**

**No. 05 Civ. 4990.**

United States District Court, S.D. New York.

May 6, 2008.

Bruce Eric Menken, John A. Beranbaum, Todd Krichmar, Beranbaum Menken Ben-Asher & Bierman LLP, New York, NY, Rebecca Joan Houlding, Rebecca Houlding, Esq., Brooklyn, NY, for Plaintiffs.

Theodore Otto Rogers, Jr., John Francis Fullerton, III, Sullivan and Cromwell, LLP, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Chris DiFilippo ("DiFilippo"), Michael Kraft ("Kraft"), Aubrey Johnson ("Johnson"), and Gentree Van Blake ("Van Blake") (collectively, "Plaintiffs"), brought this action against defendant Barclays Capital, Inc. ("Barclays"), their former employer. Plaintiffs allege that Barclays improperly classified Plaintiffs as exempt from overtime requirements, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and DiFilippo additionally alleges a violation of N.Y. Lab. Law § 650 *et seq.* ("New York Labor Law"). Barclays moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons discussed below, Barclays's motion is DENIED in part and GRANTED in part.

## I. BACKGROUND[1]

Barclays is one of the largest multinational financial services groups in the world. Plaintiffs all worked as Govern-

---

**1.** The factual summary that follows derives primarily from the Amended Complaint, dated June 28, 2006 ("Am. Compl."); Barclays's Answer to Plaintiffs' Amended Complaint, dated July 24, 2006; Barclays's Memorandum of Law in Support of Its Motion for Summary Judgment, dated December 7, 2007; Plaintiffs' Amended Memorandum of Law in Opposition to Barclays's Motion for Summary Judgment, dated January 8, 2008 ("Pls.' Mem."); Barclays's Memorandum of Law in Further Support of Its Motion for Summary Judgment, dated January 24, 2008; Barclays's Local Rule 56.1 Statement of Undisputed Facts, dated December 7, 2007; and Plaintiffs' Response to Barclays's Local Rule 56.1 Statement of Undisputed Facts, filed January 8, 2008. Except where specifically referenced, no further citation to these sources will be made.

ment Clearance Analysts ("Analysts") in Barclays's Trading Operations Division. As Analysts, over the course of their employment with Barclays, Plaintiffs were responsible for the monitoring and clearing of thousands of trades worth hundreds of billions of dollars.

Analysts are responsible for reviewing exception and balancing reports, which are generated overnight to ensure that the previous day's trading figures balance. Once the markets open, Analysts are responsible for clearing and settling Barclays's transactions involving United States government and agency securities. Trades may be settled and cleared using a number of different strategies, including: identifying potential pair-offs,[2] initiating round robins with counterparts in other banks,[3] determining the need to borrow securities from a third party to cover trading positions, or deciding whether to accept money differentials. Additionally, twice a day, Analysts conduct break resolution, which involves investigating and analyzing various data related to the trade at issue, determining why the transaction was not completed properly and resolving any internal balancing inconsistencies.

Barclays hired DiFilippo as an Analyst in June 1998. During DiFilippo's tenure as an Analyst with Barclays, he received discretionary bonuses totaling more than $44,000, and, at its height, his annual salary reached $74,000. DiFilippo's employment with Barclays ended in October 2004, at which time he received a severance payment of approximately $53,000 in exchange for executing a waiver and general release.

Kraft and Johnson were previously employed at Barclays as temporary workers through an employment agency (the "Agency"), prior to becoming permanent employees. As temporary workers, the Agency—not Barclays—was responsible for classifying Kraft and Johnson's employment status for FLSA purposes and compensating them accordingly. The Agency classified Kraft and Johnson as not exempt from the FLSA overtime requirements and compensated them on an hourly-plus-overtime basis. Barclays hired Kraft and Johnson as Analysts on March 15, 2004 and April 25, 2005 respectively. Once it employed them, Barclays classified Kraft and Johnson as exempt from the FLSA overtime requirements and paid them annual salaries reaching as high as $53,000 and $70,000 respectively. Kraft and Johnson ended their employment relationships with Barclays on July 30, 2004 and November 21, 2005 respectively.

Van Blake assumed Analyst responsibilities on February 16, 2005. Van Blake is the only Plaintiff who earned a college degree (the other Plaintiffs have only high school educations). On October 17, 2005, Barclays terminated Van Blake for gross misconduct.

Plaintiffs, at times, worked more than forty hours per week. Barclays alleges that, because of the nature and circumstances underlying Plaintiffs' duties and responsibilities and the level of their respective annual salaries, it classified Plaintiffs as exempt from the FLSA and New York Labor Law overtime requirements and did not directly compensate Plaintiffs for working more than forty hours per week.

---

**2.** A "pair-off" occurs when one party to a transaction remits to the counterparty the difference between the purchase and sale prices of a given financial interest.

**3.** "Round robins" entail a chain of deliveries among multiple parties that ultimately leads back to the original deliverer.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

### B. *FAIR LABOR STANDARDS ACT*

#### 1. *Statutory Framework*

 "Congress intended the FLSA to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Freeman v. National Broad. Co.,* 80 F.3d 78, 86 (2d Cir.1996) (*quoting Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Consistent with this intention, the FLSA's minimum wage and maximum hour requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity" (the "Administrative Exemption"). FLSA § 213(a)(1). Although the Administrative Exemption is to be narrowly construed and employers bear the burden of proving that its employees are covered by any FLSA exemption (*see Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991)), a court may find employees exempt from the FLSA overtime requirements as a matter of law if, "in light of undisputed facts in the record, a reasonable fact finder could only find that the employee was an administrator or professional, and that he or she consistently exercised independent discretion and judgment." *Alberti v. County of Nassau,* 393 F.Supp.2d 151, 174 (E.D.N.Y.2005).

The regulations implementing the FLSA provide that an employee falls under the Administration Exemption when: (1) the employee is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week" (the "Salary Requirement"); (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" (the "Work Requirement"); and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance" (the "Discretion Requirement"). 29 C.F.R. § 541.200(a)(1)-(3).[4]

#### 2. *Application of FLSA*

Barclays asserts that it properly classified Plaintiffs as exempt from the FLSA's

---

4. The Department of Labor issued new overtime regulations on August 23, 2004, which are substantially the same as the prior regulations' "short test," which applied to employees making at least $250 per week. Because the regulations are substantially the same and will not affect the outcome in this case, the Court will use the post–2004 regulations for analyzing all Plaintiffs' FLSA claims.

overtime requirements. The Court is not persuaded because, even assuming the Salary Requirement is met,[5] material issues of fact exist regarding whether the Plaintiffs met the Work and Discretion Requirements.

### a. *Work Requirement*

To comport with the Work Requirement, "an employee's 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a). An employee's primary duty is "the principal, main, major or most important duty that the employee performs" as determined "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*

Furthermore, for the employee's primary duty to be considered the performance of exempt work, the employer must sufficiently establish that the primary duty was directly related to the employer's management or general business operations, meaning that the employee performs "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Employers' "general business operations" includes "a wide variety of persons ... whose work affects business operations to a substantial degree, even though their assignments are tasks related to operation of a particular segment of the business." *Schwind v. EW & Assocs., Inc.*, 357 F.Supp.2d 691, 704 (S.D.N.Y.2005). Although work in a functional area, such as finance, is generally considered work directly related to an employer's management or general business operation (*see* 29 C.F.R. § 541.201(b)), work in the financial services industry meets the Work Requirement when, for example, the employees' duties include:

> collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

*Id.* § 541.203(b).

Plaintiffs' primary responsibilities as Analysts included: cross-checking trading records; monitoring the settlement of trades originated and designed by others; investigating and resolving the underlying causes of discrepancies in the trading records; and initiating and participating in the pair-off and round robin processes (col-

---

**5.** Plaintiffs meet the Salary Requirement. In 1998, when Barclays hired DiFilippo, his annual base salary was $58,000, which equates to over $1,000 per week, and at the time DiFilippo terminated his employment with Barclays, his annual salary had increased to $74,000, equating to more than $1,400 per week. Similarly, Kraft, Johnson, and Van Blake all had annual salaries of $53,000 (approximately $1,000 per week), $70,000 (approximately $1,300 per week), and $63,000 (approximately $1,200 per week), respectively. Further, Barclays asserts that compared to their non-exempt employees, Plaintiffs, as exempted employees, received higher salaries and an extra week of vacation. *See Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F.Supp.2d 288, 301 (S.D.N.Y.2005) (finding that the plaintiff met the Salary Requirement based in part on her higher salary and extra time-off benefits as compared to employees classified as non-exempt). Accordingly, because Plaintiffs' salaries met or exceeded the $455 per week statutory threshold at all relevant times, the Salary-Requirement is met. However, to be exempted under the Administration Exemption, Plaintiffs must also meet the Work and Discretion Requirements. *See* 29 C.F.R. § 541.200(a)(1)-(3).

lectively, the "Analysts' Responsibilities"). While neither the parties nor the Court have found sufficient case law regarding the applicability of the FLSA to Analysts, courts have found positions with duties analogous to the Analysts' Responsibilities as non-exempt. *See, e.g., Grandits v. United States,* 66 Fed. Cl. 519, 522 (2005) (finding that the plaintiff import specialists, who spent about 40 percent of their time "reviewing entries for discrepancies and anomalies" and identifying and designing priorities for reviewing entries and 60 percent of their time liaising with the public and serving as commodity experts, were subject to the FLSA overtime requirements); *Martin v. Indiana Michigan Power Co.,* 381 F.3d 574, 581–83 (6th Cir. 2004) (finding that plaintiff's job of assisting in keeping the computers and network running to the specifications and designs of others was subject to the FLSA overtime requirements because plaintiff was in "no way involved in advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control") (citation and quotation marks omitted); *Jackson v. McKesson Health Solutions LLC,* No. 03 Civ. 11177, 2004 WL 2453000, at *6 (D.Mass. Oct. 29, 2004) (finding there was a material issue of fact regarding whether the plaintiff, who was a computer support technician correcting computer problems that were assigned to him through "trouble tickets," fell within the Work Requirement).

 A reasonable jury could conclude that Analysts' Responsibilities did not sufficiently include: advising Barclays' management; planning, negotiating and/or representing Barclays; or promoting the sales and business research and control of Barclays. *See Martin,* 381 F.3d at 581–83. Further, a jury could find that, similar to the import specialists and computer techni-

cians who were found subject to the FLSA overtime requirements, Plaintiffs' duties included sufficient non-exempt duties and responsibilities, such as investigating, troubleshooting, and rectifying trade imbalances. Accordingly, there is a material issue of fact regarding whether the Analysts' Responsibilities fall within the Work Requirement.

### b. *Discretion Requirement*

There are also genuine issues of material fact regarding whether Plaintiffs met the Discretion Requirement.

To meet the Discretion Requirement, a position must entail "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Exercising discretion and independent judgment generally involves "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). " '[M]atters of significance' refers to the level of importance or consequence of the work performed." *Id.* § 541.202(a).

The regulations list ten factors (the "Discretion Factors") to be considered when determining whether an employee meets the Discretion Requirement, including:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects the business operations to a substantial de-

gree, even if the employee's assignments are related to the operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). Although satisfaction of the Discretion Requirement is analyzed on a case-by-case basis, courts have found job positions meeting as few as two Discretion Factors to have satisfied the Discretion Requirement. *See* 69 Fed. Reg. 22122, 22143 (Aug. 23, 2004); *see, e.g., O'Neill–Marino v. Omni Hotels Mgmt. Corp.,* No. Civ. 3793, 2001 WL 210360, at *8–9 (S.D.N.Y. Mar. 2, 2001); *Stricker v. Eastern Off Road Equip., Inc.,* 935 F.Supp. 650, 656–59 (D.Md.1996).

Plaintiffs assert that, as Analysts, much of their time was spent on tasks involving no discretion at all, such as cross-checking trading reports, releasing trades that matched up in the reports, running reports, processing coupons, preparing wire transmissions, and inputting trade information. Plaintiffs further argue that, as to those job duties requiring Analysts to exercise some discretion, the discretion was narrowly confined and did not involve making judgments independent of the trader, but instead, Analysts generally waited for and executed the traders' instructions.

Plaintiffs also assert that they did not make recommendations to the traders regarding resolving trade imbalances. Plaintiffs contend that although they had limited discretion regarding the pairing-off of securities, this limited discretion pales in comparison to the vast majority of their duties which did not involve independent judgment and that this discretion was not so real and substantial so as to take resolution of the issue away from a jury. *See Clark v. J.M. Benson Co.,* 789 F.2d 282, 288 (4th Cir.1986) (finding that bookkeeper's decisions of which monthly report to prepare first or when to prepare the commission checks did not present "such 'real and substantial' discretion as to take the issue away from a jury").

Plaintiffs further argue that, although the Analyst position required skill, it was a skill closely associated with following settled procedures, such as the "Fixed Income Settlements Procedures" manual, which "closely prescribed limits to determine the correct response to an inquiry or set of circumstances." 29 C.F.R. § 541.704.

Barclays presents a significantly different picture of the Analysts' discretion. Barclays asserts that Plaintiffs exercised sufficient discretion and independent judgment by declining trades back to the clearing bank, deciding whether to receive trades in securities versus currency, accepting money differences on trades, identifying pair off opportunities and proactively raising the prospect with counterparties, identifying securities for round robins, determining whether to deliver smaller trades before larger trades, determining whether there was a need to borrow securities from the Bank of New York, and investigating and reconciling trade discrepancies. Barclays further

contends that Plaintiffs are downplaying the discretion and judgment required of Analysts in resolving breaks, and that Plaintiffs could manually override the system even if traders had not issued such an instruction.

■ Barclays has not proffered sufficient evidence that Plaintiffs exercised such real and substantial discretion as to take the issue away from a jury. *See Clark,* 789 F.2d at 288. Plaintiffs concede that, as Analysts, they had some judgment and discretion, but Plaintiffs submit that, contrary to Barclays's position, a sufficient portion of an Analysts' duties involved tasks with no significant judgment and discretion and that these non-discretionary duties significantly outweighed any Analysts' duties involving judgment and discretion. Accordingly, a genuine issue of material fact exists regarding whether Plaintiffs sufficiently met the Discretion Requirement.

### 3. *Willfulness*

Barclays asserts that no reasonable jury could conclude that it showed reckless disregard for the FLSA overtime provisions. The Court is not persuaded.

■ For a court to conclude that a defendant's violation of FLSA was willful, the court must find that defendants either knew of the violation or showed reckless disregard for whether their conduct complied with the FLSA. *See Moon v. Kwon,* 248 F.Supp.2d, 201, 231 (S.D.N.Y.2002). Employers maybe found to have acted recklessly pursuant to the FLSA if they made neither a diligent review nor consulted with counsel regarding their overtime practices and classifications of employees. *See Ayres v. 127 Rest. Corp.,* 12 F.Supp.2d 305, 309 (S.D.N.Y.1998) (finding that defendant acted recklessly because it offered no evidence that it actually reviewed its own employment policies, made relevant inquiries into the applicable law, or relied on the advice of counsel). Further, an employer may be found to have acted willfully if it is familiar with the FLSA and has knowledge that at least one of its employees is not compensated for overtime pay but makes "no effort to seek specific legal advice on the issue." *Moon,* 248 F.Supp.2d at 231. However, an employer's mere negligence or a good faith—but incorrect—belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation.

Plaintiffs assert that William Arnold ("Arnold"), Barclays's official in charge of the Analysts since June 2002, was responsible for working with Barclays's Human Resources department to define a position's job responsibilities and determine each position's FLSA classification. Plaintiffs further contend that Arnold never reviewed the classification of any employee within Barclays's Trading Operations group, which included Plaintiffs. Furthermore, Plaintiffs assert that Barclays was placed on notice that its classification of Plaintiffs as exempt was potentially erroneous because Barclays classified at least two Analysts as non-exempt and paid them overtime while other Analysts were denied overtime.

Barclays counters that it had no notice that Plaintiffs were entitled to overtime compensation, and that its managers and human resources personnel worked together to classify positions pursuant to the FLSA. Barclays argues that it believed in good faith, or was at worst merely negligent, in its classification of Plaintiffs under the FLSA, and therefore, Barclays contends that it cannot be liable for a willful violation of the FLSA's overtime requirements.

■ The Court concludes that a genuine issue of material fact exists regarding

whether Barclays acted with reckless disregard in violation of the FLSA. Accordingly, a reasonable jury could conclude that Barclays willfully violated the FLSA.

## C. *DIFILIPPO'S NEW YORK LABOR LAW CLAIM*

■ In addition to the FLSA claim, DiFilippo brought an additional claim for overtime compensation pursuant to the New York Labor Law. Barclays asserts that DiFilippo executed a general release and waiver, waiving his right to seek relief under the New York Labor Law in exchange for a severance payment and is barred from raising this claim. The Court agrees.

■ A release is a type of contract and is governed by contract law. *See Simel v. J.P. Morgan Chase*, No. 05 Civ. 9750, 2007 WL 809689, at *2 (S.D.N.Y. Mar. 19, 2007). Courts applying New York law will enforce valid releases which are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not "the product of fraud, duress, or undue influence." *See Skluth v. United Merch. & Mfr., Inc.*, 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (App. Div. 1st Dep't 1990) (citations and quotation marks omitted); *see also Laramee v. Jewish Guild for the Blind*, 72 F.Supp.2d 357, 359 (S.D.N.Y.1999).

■ Agreements that purportedly release employers from liability for claims arising under the New York Labor Law overtime requirements are generally valid and enforceable. *See Simel*, 2007 WL 809689, at *4–5. In *Simel*, the plaintiff (the "Employee") brought suit against his ex-employer (the "Employer"), claiming that the Employer violated, among other things, the overtime requirements of the New York Labor Law. The Employer moved to dismiss, asserting that the Employee was barred from pursuing his current claim by a prior agreement and release (the "Simel Release"), which stated that the Employee releases the Employer from "any and all actions . . . arising out of [the Employee's] association and/or termination of association with [the Employer]" regarding "any claims arising under any contract, tort, federal, state or local or violations of any other law rule regulation, or ordinance pertaining to employment, wages, hours or other terms or conditions of employment and termination of employment of [the Employee]." *Id.* at *2. The Simel Release was part of a settlement between the Employee and the Employer, which was intended "to resolve an employment dispute [6] that arose after [the Employee]'s resignation." *Id.* at *1.

The Employee argued that his overtime claim was not barred by the Simel Release because the Simel Release and the overtime claim "dealt with different subjects." *Id.* at *3. The *Simel* Court was not persuaded, finding that the Employee's claims were "squarely within the scope of the [Simel Release] and [were] considered settled thereunder." *Id.*

The Employee then asserted that his rights under the New York Labor Law were "established independently in public policy and therefore [could not] be 'waived or released,' even through settlement." *Id.* at *4. The *Simel* Court, however, was not persuaded, and determined that "[t]he policy goals behind the New York overtime wage law . . . were not frustrated by [the Employee's] settlement of any wage and hour claims in the [Simel Release]," and that even though the FLSA's overtime

---

**6.** The *Simel* Court did not expressly set forth the allegations and factual basis of the prior dispute.

provisions could not be waived by employees, employees may validly waive their rights under the New York Labor Law. *Id.* at *4–5. Accordingly, the Simel Court granted the Employee's motion to dismiss.

By a severance agreement dated October 31, 2004 (the "DiFilippo Agreement"), DiFilippo, in exchange for nearly $53,000 in severance compensation, expressly released Barclays "from any and all causes of action, suits … disputes, controversies, contentions, differences … claims and demands of any kind whatsoever … by reason of [DiFilippo's] employment and/or cessation of [his] employment with [Barclays], or otherwise involving facts which occurred on or prior to the effective date of [the DiFilippo Agreement]." (The DiFilippo Agreement 1, attached as Ex. G to Decl. of Allison Deeb.) The DiFilippo Agreement further stated that "[s]uch released Claims include … any other contract, tort or common law claim," including any claim brought under the New York State Labor Law. *Id.* Agreements similar to the DiFilippo Agreement have been found to not violate New York Public policy. *See, e.g., Simel,* 2007 WL 809689, at *4–5.

DiFilippo asserts that *Simel* is distinguishable from the instant matter because a bona fide dispute existed at the time the Simel Release was executed, whereas no bona fide dispute existed between DiFilippo and Barclays at the time the DiFilippo Agreement was executed. In support of its position, however, DiFilippo relied solely on *Hohnke v. United States,* which stated that for FLSA settlement agreements to be enforceable, the "FLSA settlement must resolve a bona fide dispute over hours worked or compensation due." *See* 69 Fed. Cl. 170, 173 (2005). DiFilippo, in his motion papers, has not pointed to any authority stating that release agreements, similar to the DiFilippo Agreement, must resolve a bona fide dispute in order to be enforceable under the New York Labor Law. The Court further notes that in *Simel,* the dispute motivating the parties to execute the Simel Release was never expressly set forth in detail and may not, contrary to DiFilippo's assertions, have been a bona fide dispute over hours or compensation. The Court concludes that despite some differences in the underlying factual circumstances between the instant action and *Simel,* DiFilippo has not sufficiently established that those differences are material enough to preclude the Court from relying on the *Simel* Court's legal conclusions in the instant action.

The DiFilippo Agreement is valid and enforceable, barring DiFilippo's claim brought pursuant to the New York Labor Law. DiFilippo has not alleged that the DiFilippo Agreement was the product of fraud, duress, or undue influence, or that he entered into the agreement unknowingly or involuntarily. The DiFilippo Agreement clearly and unambiguously released Barclays from any and all causes of action that could be brought by DiFilippo under the New York Labor Law and involving facts which occurred prior to the agreement's effective date. Accordingly, DiFilippo's claim to overtime pay pursuant to the New York Labor Law fall "squarely within the scope of the [DiFilippo Agreement] and are considered settled thereunder." *Simel,* 2007 WL 809689, at *3.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 50) of defendant Barclays Capital, Inc. ("Barclays") for summary judgment is DENIED with respect to the claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* by Chris DiFilippo ("DiFilippo"), Michael Kraft, Aubrey John-

son, and Gentree Van Blake, and it is further

**ORDERED** that the motion (Docket No. 50) of Barclays for summary judgment is GRANTED with respect to the claim brought pursuant to the N.Y. Lab. Law § 650 *et seq.* by DiFilippo.

**SO ORDERED.**